UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-80040-CIV-MARRA

DONALD SOLODAR and CAROLLE SOLODAR,

Plaintiffs,

vs.

OLD PORT COVE LAKE POINT TOWER
CONDOMINIUM ASSOCIATION, INC., et al,

Defendants.
_____/

## OPINION AND ORDER

This cause is before the Court upon Defendants' Motion to Dismiss Complaint with Prejudice (DE 18). The motion is fully briefed and ripe for review. The Court has carefully considered the motion and is otherwise fully advised in the premises.

I.  Background

Plaintiffs Donald Solodar and Carolle Solodar ("Plaintiffs") bring this three-count Complaint against Defendants Old Port Cove Lake Point Tower Condominium Association, Inc., Jan Muelder, Robert Marschall, Kenneth Weiss, Robert Quig, Donald Hackl, John Manning, David Gregg, M.M.I of the Palm Beach, Inc., Cathie Carr and Andy Romero (collectively, "Defendants") for violations of 42 U.S.C. § 3604(f)(3), Florida Statute § 760.23(8), Palm Beach County Code of Ordinances § 15-58(12) ("failure to make reasonable accommodations with a disability") (count one); 42 U.S.C. § 3604(f)(2), Florida Statute § 760.23(8), Palm Beach County Code of Ordinances § 15-58(2) ("discrimination in the terms, conditions, or privileges of the provision of services or facilities in connection with a dwelling") (count two) and 42 U.S.C. §

3617, Florida Statute § 760.37, Palm Beach County Code of Ordinances § 15-58(14), (18) ("retaliation in violation of the Fair Housing Act") (count three).

The Complaint makes the following allegations: Plaintiffs Donald and Carolle Solodar currently own and reside at 100 Lakeshore Drive, Unit # L-10, North Palm Beach, Palm Beach County, Florida 33408. (Compl. ¶ 3.) Ms. Solodar is a person with disability as she suffers from cardiovascular disease and experienced a heart attack in May of 2009. She has substantial limitation in her mobility, including her ability to navigate steps and walk long distances in other than a climate-controlled environment. She also tires easily and suffers from shortness of breath. (Compl. ¶ 4.) Ms. Solodar is substantially limited in a major life activity by virtue of the impairment of her circulatory system. (Compl. ¶ 5.)

Defendant Old Port Cove Lake Point Tower Condominium Association, Inc. ("Lake Point Tower") is a Florida non-profit corporation. (Compl. ¶ 8.) Defendant M.M.I of the Palm Beaches, Inc. ("MMI") operates and manages the condominium Lake Point Tower. (Compl. ¶ 16.) The individually named Defendants are either members of the Board of Governors of Lake Power Tower or employees of the condominium's management company. (Compl. ¶¶ 9-15, 17-18.) Lake Point Tower and MMI manage and operate a condominium of 181 units, 169 of which are in a 22-story tower, and 12 units are in separate two-story "lanai" structures surrounding the tower. Residents are assigned parking in a garage under the tower and the lanais. Guests, owners and vendors were previously permitted to park on the upper deck of the garage. (Compl. ¶ 24.)

In 2008, Plaintiffs purchased and moved into unit L-10 and had two parking spaces assigned to them located in the garage. The closest way to get to these spaces was down 17 steps, exposed to the elements, through the garage door and then approximately 20 feet to Plaintiffs'

cars. (Compl. ¶ 25.) Immediately adjoining the front walk of Plaintiffs' unit is the south part of the upper deck of owner, visitor and vendor parking, consisting of ten parking spaces (hereinafter, "South Parking Deck"). (Compl. ¶ 26.)

During Ms. Solodar's initial recovery period from a 2009 heart attack, her doctor prescribed her a handicapped placard to allow her to take advantage of closer parking spaces. (Compl. ¶ 27.) Until November of 2010, Ms. Solodar parked in the South Parking Deck, immediately next to the entrance to her home. (Compl. ¶ 28.) In that parking deck, there were two signs posted, one sign stated "NO PARKING - OWNERS AND GUESTS ONLY" and the other sign stated "NO VENDORS - OWNER LOADING ZONE 30 MINUTES ONLY." (Compl. ¶ 29.) On or about November of 2010, Mr. Solodar complained to various Defendants that vendors were improperly parked in the South Parking Deck, making it impossible for him to exit the deck on one occasion. (Compl. ¶ 30.)

Starting on November 16, 2010, Plaintiffs were advised that the Board of Governors was planning on converting the South Parking Deck to a vendor's only parking area. (Compl. ¶ 30.) Plaintiffs then requested a designated handicapped parking spot from MMI and Lake Point Tower. (Compl. ¶ 31.) MMI and Lake Point Tower denied their request, claiming that there was no obligation to have a designated parking space on the South Parking Deck. The Board of Governors unanimously rejected the request for accommodation. (Compl. ¶ 32.) Soon thereafter, Lake Point Tower sent Ms. Solodar a flyer with directions on what to do in the event someone you are with has a heart attack. The flyer did not contain any indication of its purpose. (Compl. ¶ 33.)

On or about November 26, 2010, the individual Defendants denied Plaintiffs' request for

3

an accommodation stating, "No single Lanai or other unit owner should have priority over the service needs of other owners." (Compl. ¶ 34.) Previously, on November 7, 2010, Defendant Andy Romaro ("Romaro"), a licensed community association manager, sent the Lanai owners a letter regarding the North Parking Deck, stating:

> The purpose of this letter is to remind you concerning the parking on the upper deck. There has been some recent confusion about the upper deck parking spaces; these spaces are open to residents, guests and employees. There are no assigned places for unit owners. The only assigned spaces for unit owners are in the underground parking garage.

(Compl. ¶¶ 18, 35.)

On February 21, 2011, the issue of parking was discussed before the association at Lake Point Tower. The minutes stated as follows:

> Mr. Muelder[1] stated that in the past there was a never a problem with residents occasionally parking in the service area during business hours. However, recently a unit owner claimed that their vehicle should have priority over contractors parking in that area. This is now an issue and to reduce liability risks wording has been drafted to emphasize the meaning of "Service Area." Restrict parking in the Service Area during business hours to Service Vehicles, Vendors, Suppliers, Movers and Contractors only. Accordingly, parking by unit owners in the Service Area will be available only during non-business hours. He continued to say that the Board intends to notify all unit owners that this area is intended during business hours for service vehicles only an [sic] a letter will be sent out shortly.

(Compl. ¶ 36.)

On March 4, 2011, Mr. Muelder on behalf of Lake Point Tower sent a notice to all residents of the condominium association that (1) unit owners are not permitted to park in the South Parking Deck from 8:00 a.m. to 4:30 p.m., Monday through Friday; (2) only loading and unloading by unit owners is permitted in a designated space; (3) parking outside business hours is on a first come, first served basis; (4) no space is assigned to, or reserved for any unit owner at

---

[1] Jan Muelder ("Muelder") is the President of the Board of Governors of Lake Point Tower. (Compl. ¶ 9.)

any time and (5) failure to comply is subject to measures by the Board to ensure compliance and enforcement. (Compl. ¶ 37.)  These rules would not be enforced from December 20th to the last day of February, a moratorium period for vendors when the building is mostly occupied with its residents. (Compl. ¶ 38.)

On or about March 7, 2011, Plaintiffs retained counsel who "formally requested" a designated accessible parking space in the South Parking Deck. (Compl. ¶ 40.)  In response, Lake Point Tower and MMI requested additional documentation to determine if the accommodation was necessary, including information on the nature of the disability, medical evidence, the credentials of Ms. Solodar's health care provider and additional information regarding the handicapped decal. (Compl. ¶ 41(a)-(f).)   For all other residents who lived in the tower who required a closer parking space, such request was accommodated upon displaying the handicapped placard. (Compl. ¶ 42.)  Nonetheless, on or about March 21 and 24, 2011,[2] counsel for Plaintiffs provided documentation of Ms. Solodar's disability from her cardiologist, her cardiologist's credentials and a copy of her handicapped decal. (Compl. ¶ 43.)  Around this same time period, the Board of Governors, along with MMI, Cathie Carr ("Carr"), a community association manager, and Mr. Romero, attended a meeting in which the parking restrictions of the South Parking Deck were passed unanimously. (Compl. ¶ 44.)  Thereafter, Lake Point Tower and MMI began to conduct surveillance on Ms. Solodar. (Compl. ¶ 45.)

From March 24, 2011, Mr. Romero, on behalf of Lake Point Tower and MMI, sent a letter to all unit owners as follows:

---

[2] Although the Complaint provides the date of March 21, 2010, it appears, from the context, that this event occurred in 2011.

>On March 21st the Board of Governors of Lake Point Tower passed a new regulation regarding parking in the Service Area in the back of the building. The Regulation is as follows:
>
>The Service Area is, during business hours of 8:00 a.m. to 4:30 p.m. Monday through Friday, reserved for service vehicles only. Outside business hours, parking in the Service Area is on a first-come, first-served basis. No space in the Service Area is assigned to, or reserved for, any Unit Owner at any time.
>
>This policy is effective April 18, 2011.

(Compl. ¶ 46.)

On April 4, 2011, Lake Point Tower and MMI's counsel claimed Ms. Solodar did not have a disability because she was able to exercise. As an alternative accommodation, they would permit Plaintiffs to install, at Plaintiffs' expense, an automatic door in the downstairs garage and non-skid traction steps on the stairs leading down to the garage. (Compl. ¶ 47.) On April 14th and 18th, Mr. Romero posted violations on Plaintiffs' car when it was parked on the South Parking Deck, threatening fines and towing. (Compl. ¶ 49.) Next, on April 26, 2011, Lake Point Tower banned Ms. Solodar from communication with the association unless done in writing or by telephone. If such ban was violated, Ms. Solodar was advised she would liable for the Association's legal fees and costs. Such actions were allegedly taken for a pattern of abusive behavior, but was in retaliation for claims under the Fair Housing Act. (Compl. ¶ 51.) On May 16, 2011, the Board of Governors, MMI, Mr. Romero and Ms. Carr had a meeting wherein they reiterated the denial of Plaintiffs' accommodation and announced that Ms. Solodar was banned from entering the associations' offices without a prior appointment because she was "screaming and ranting insults" at the administrative assistant. (Compl. ¶ 52.) Next, on June 22, 2011, Ms. Solodar's doctor urged the assigning of a parking space for her. (Compl. ¶ 53.) On July 14, 2011, Ms. Solodar was banned from speaking to any employee of Lake

Point Tower. (Compl. ¶ 54.)

The Palm Beach Office of Equal Opportunity issued a cause finding that Lake Point Tower discriminated against Ms. Solodar by failing to grant an accommodation. (Compl. ¶ 55.) After that finding, Lake Point Tower offered a previously marked handicapped parking space "hundreds of feet away outside the main entrance to the tower or by the elevators which serve the tower garage." (Compl. ¶ 56.) Ms. Solodar has now restricted her activities and chooses not to leave home when she would have otherwise. (Compl. ¶ 57.)

Defendants move to dismiss all three counts of the Complaint. With respect to count one, Defendants contend that Ms. Solodar is not substantially limited in a major life activity and, regardless, Plaintiffs received their requested accommodation. Next, Defendants argue that count two is redundant of count one. Finally, with respect to count three, Defendants state that engaging in inquiries as to Ms. Solodar's disability is not a basis for retaliation under the law.

## II.  Legal Standard

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

7

accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950.  When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

### III.  Discussion

The Fair Housing Act ("FHA") makes it illegal to discriminate "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap . . ." 42 U.S.C. § 3604(f)(2). Handicap discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

To prevail on a claim brought pursuant to 42 U.S.C. § 3604(f)(3)(B), a plaintiff must establish that (1) he is disabled or handicapped within the meaning of the FHA; (2) he requested a reasonable accommodation; (3) such accommodation was necessary to afford him an opportunity to use and enjoy his dwelling and (4) the defendant refused to make the requested accommodation. Hawn v. Shoreline Towers Phase I Condominium Assoc., Inc., 347 F. App'x. 464, 467 (11th Cir. 2009) (citing Schwarz v. City of Treasure Island, 544 F.3d 1201, 1218-19 (11th Cir. 2008). A plaintiff, however, is not entitled to the accommodation of his or her choice,

8

but is entitled only to a reasonable accommodation. Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1286 (11th Cir. 1997). "Whether an accommodation is reasonable depends on specific circumstances." Terrell v. USAir, 132 F.3d 621, 626 (11th Cir. 1998); see also Loren v. Sasser, 309 F.3d 1296, 1302 (11th Cir. 2002) ("Whether a requested accommodation is required by law is highly fact-specific, requiring case-by-case determination.") (internal quotation marks omitted).

Here, the Complaint properly alleges that Ms. Solodar was a person with a disability by virtue of her cardiovascular condition which substantially limits her mobility.[3] (Compl. ¶¶ 4-5, 27.)  See 42 U.S.C. § 3602(h);[4] 42 U.S.C. § 12102(2).[5]  Furthermore, she requested an accessible

---

[3] The Court looks to the Rehabilitation Act and the American with Disabilities Act for guidance in evaluating reasonable accommodation claims under the FHA. Schwarz v. City of Treasure Island, 544 F.3d 1210, 1220 (11th Cir. 2008).

[4] "Handicap" means, with respect to a person--

(1) a physical or mental impairment which substantially limits one or more of such person's major life activities

42 U.S.C. § 3602(h)(1).

[5]  2) Major life activities

    (A) In general

    For purposes of paragraph (1), major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, *walking*, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.

    (B) Major bodily functions

    For purposes of paragraph (1), a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain,

parking space that would afford her an opportunity to use and enjoy her dwelling and Defendants refused to grant that request. Instead, Defendants offered to install an automatic garage door in the garage and non-skid traction strips on the garage stairs at Plaintiffs' expense or a parking space hundreds of feet away from her residence. (Compl. ¶¶ 31-32, 34, 40, 47-48, 56, 63-65.) The Complaint, however, alleges that stairs and walking several hundred feet would pose a danger to Ms. Solodar based on her cardiovascular condition. (Compl. ¶¶ 4, 48.) Because an accessible parking space can be considered a reasonable accommodation, the Court concludes, at the motion to dismiss stage of the proceeding, that Plaintiffs have pled a valid claim that Ms. Solodar is a person with a disability and Defendants did not reasonably accommodate her. 24 C.F.R. § 100.204(b)(2);[6] see Hubbard v. Samson Management Corp., 994 F. Supp. 187, 191

---

respiratory, *circulatory*, endocrine, and reproductive functions.

42 U.S.C. § 12102(2) (emphasis added).

[6] § 100.204 Reasonable accommodations.

 (a) It shall be unlawful for any person to refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a handicapped person equal opportunity to use and enjoy a dwelling unit, including public and common use areas.

(b) The application of this section may be illustrated by the following examples:

Example (1): A blind applicant for rental housing wants live in a dwelling unit with a seeing eye dog. The building has a no pets policy. It is a violation of § 100.204 for the owner or manager of the apartment complex to refuse to permit the applicant to live in the apartment with a seeing eye dog because, without the seeing eye dog, the blind person will not have an equal opportunity to use and enjoy a dwelling.

Example (2): Progress Gardens is a 300 unit apartment complex with 450 parking spaces which are available to tenants and guests of Progress Gardens on a first

(S.D.N.Y. 1998) (the Act only requires that a disabled person be able to park sufficiently near her apartment so as to equalize her opportunity to use and enjoy her dwelling).

     Nonetheless, Defendants contend that the Complaint makes conclusory allegations regarding the existence of Ms. Solodar's disability. Specifically, they claim the Complaint does not make clear that any of Ms. Solodar's major life activities are "substantially limited" or that difficulty in walking or navigating steps constitutes a disability within the meaning of the Act. (Mot. at 6-8.)  Significantly, the cases upon which Defendants rely for this argument are in a different procedural posture than the instant case.  (Mot. at 6-7.)  None of those cases are at the pleading stage, but instead address summary judgment or a motion for judgment as a matter of law after trial. See, e.g., Rossbach v. City of Miami, 371 F.3d 1354, 1359 (11th Cir. 2004) (deciding after hearing evidence at trial that the trial court properly rejected the plaintiffs' claims that they were "substantially limited" when the testimony was "vague" and "unaccompanied by any evidence"); Hilburn v. Murata Electronics N. Am., Inc., 181 F.3d 1220, 1228 (11th Cir. 1999) (summary judgment case noting that there is no specific evidence showing that the plaintiff's ability to run is substantially limited); Moore v. Hillsborough County Bd. of County

---

> come first served basis. John applies for housing in Progress Gardens. John is mobility impaired and is unable to walk more than a short distance and therefore requests that a parking space near his unit be reserved for him so he will not have to walk very far to get to his apartment. It is a violation of § 100.204 for the owner or manager of Progress Gardens to refuse to make this accommodation. Without a reserved space, John might be unable to live in Progress Gardens at all or, when he has to park in a space far from his unit, might have great difficulty getting from his car to his apartment unit. The accommodation therefore is necessary to afford John an equal opportunity to use and enjoy a dwelling. The accommodation is reasonable because it is feasible and practical under the circumstances.

24 C.F.R. § 100.204

Commissioners, 544 F. Supp. 2d 1291, 1302 (M.D. Fla. 2008) (the plaintiff failed to produce evidence at summary judgment regarding substantial impairment in walking and standing); Mitchell v. Girl Scouts of the U.S.A., No. 98 CV 3730 (GBD), 2003 WL 22705121, at * 7 (S.D.N.Y. 2003) (granting the defendant's motion for summary judgment when the record is "devoid of any evidence" that the plaintiff had an impairment that substantially limits a major life activity). Simply put, a determination of substantial limitation requires a factual inquiry not appropriate at the motion to dismiss stage. By having alleged facts that, if proven, may give rise to a determination that Ms. Solodar is "substantially limited" in a major life activity, the Complaint may go forward.

Next, Defendants complain that Plaintiffs omitted a reference to the entirety of their first request for accommodation "presumably to preclude the [C]ourt from considering their request for an 'alternative' accommodation, which was granted by [ ] Defendants." (Mot. at 18.) In support, Defendants have attached a letter from Plaintiffs seeking either a handicapped parking space or "in the alternative, leave the single unit owner loading zone spot as it has long been intended."[7] (November 23, 2010 letter from Plaintiffs to Board of Governors, Ex. A, DE 18-1.) Further, Defendants contend that the Court may consider this document because it was referenced to in the Complaint. According to Defendants, once this document is taken into account, it is clear that they granted Plaintiffs' request for an accommodation and therefore Plaintiffs cannot state an action based on the failure of Defendants to provide a reasonable accommodation.

---

[7] The letter also states, "The solution to the (non)problem is to restrict use of the ten spots to unit owners and vendors servicing their needs only and to have employees of Miami Management park in the upper parking area."

As a general rule, the Court must "limit[ ] its consideration to the pleadings and exhibits attached thereto" when deciding a Rule 12(b)(6) motion to dismiss. Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (internal quotation marks and citation omitted). If the parties present evidence outside of the pleadings, and the district court considers that evidence, then the motion to dismiss is converted into a motion for summary judgment under Federal Rule of Civil Procedure 56. See Fed. R. Civ. P. 12(d); Finn v. Gunter, 722 F.2d 711, 713 (11th Cir.1984) (citations omitted). There is, however, an exception to this rule. The Eleventh Circuit has allowed authentic documents to be considered on a motion to dismiss if they are referenced in the plaintiff's complaint, central to the plaintiff's claim, and submitted for the limited purpose of showing what statements the documents contain rather than the truth of matters asserted in the documents. See Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1278 & n.10 (11th Cir. 1999) (holding that it is permissible for courts to take judicial notice of SEC filings at the 12(b)(6) stage in securities fraud cases "for the purpose of determining what statements the documents contain.").

Even assuming arguendo this letter was considered at the pleading stage, it does not resolve whether Defendants, as a matter of law, granted Plaintiffs' request for a reasonable accommodation.  That determination requires a factual analysis not appropriate at the motion to dismiss stage.  See Loren, 309 F.3d at 1302 (11th Cir. 2002) ("Whether a requested accommodation is required by law is highly fact-specific, requiring case-by-case determination.") (internal quotation marks omitted).  Significantly, after the date of this letter, the Complaint alleges numerous requests by Plaintiffs for accommodations (Compl. ¶ ¶ 40, 48 ) and several different responses by Defendants (Compl. ¶ ¶ 47, 56).  Without full development of the record,

the Court cannot determine whether Plaintiffs received the accommodation they requested and whether the requested accommodation was reasonable. Terrell v. USAir, 132 F.3d 621, 626 (11th Cir. 1998) ("Whether an accommodation is reasonable depends on specific circumstances").  For these reasons, the Court denies Defendants' motion to dismiss count one of the Complaint.

The Court will now turn to count two of the Complaint, which alleges a violation of 42 U.S.C. § 3604(f)(2) on the basis that (1) the denial of a reasonable accommodation limited Ms. Solodar's use and enjoyment of the premises and (2) Defendants' unlawful inquiries into the nature and severity of Ms. Solodar's disability was beyond which was necessary to afford an accommodation and was intended to delay the efforts to obtain an accommodation. (Compl. ¶¶ 68-70.)  Defendants move to dismiss this count because it is redundant to count one and does not plead a separate and distinct claim. After careful consideration, the Court agrees with Defendants.

"A plaintiff can establish a violation under the FHA by proving (1) intentional discrimination, (2) discriminatory impact, or (3) a refusal to make a reasonable accommodation." Bonasera v. City of Norcross, 342 F. App'x 581, 583 (11th Cir. 2009) (citing Schwarz v. City of Treasure Island, 544 F.3d 1201 (11th Cir.2008); Hallmark Developers, Inc. v. Fulton County, Ga., 466 F.3d 1276, 1283 (11th Cir.2006)); Bangerter v. Orem City Corp., 46 F.3d 1491, 1500-02 (10th Cir. 1995) (same); Marton v. Lazy Day Property Owners Association, Inc., No. 2:10-cv-117-FTM-29DNF, 2011 WL 1232375, at * 4 (M.D. Mar. 20, 2011) (same).  Here, Plaintiffs are, in essence, alleging that Defendants denied them a reasonable accommodation.  Although count two attempts to bring a separate cause of action by alleging that Defendants' inquiries were unlawful, the inquiries are merely evidence of the alleged denial of a reasonable accommodation.

See United States v. Hialeah Housing Auth., 418 F. App'x 872, 878 (11th Cir. 2011) ("Under the FHA, the denial of an accommodation 'can be both actual or constructive, as an indeterminate delay has the same effect as an outright denial.'") (quoting Groome Resources Ltd. v. Parish of Jefferson, 234 F.3d 192, 199 (5th Cir.2000)); Overlook Mutual Homes, Inc. v. Spencer, 415 F. App'x 617, 622 (6th Cir. 2011) ("a housing provider that refuses to make a decision unless a requestor provides unreasonably excessive information" could be found to have "constructively denied the request [for an accommodation] by 'stonewalling' and short-circuiting the process").

This conclusion is buttressed by the Joint Statement of the Department of Housing and Urban Development and the Department of Justice on Reasonable Accommodations under the Fair Housing Act (May 17, 2004) (hereinafter, "Joint Statement").[8] The Joint Statement explains "an undue delay in responding to a reasonable accommodation request may be deemed to be a failure to provide a reasonable accommodation." (Joint Statement 15.) The Joint Statement also provides guidelines on the type of information a housing provider may request from a person with a disability in support of a requested accommodation. (Joint Statement 17-18.) Hence, while evidence of Defendants' inquiries into Ms. Solodar's condition may be relevant to the issue of whether Defendants failed to provide her with a reasonable accommodation, it does not give rise to a separate cause of action. See Bhogaita v. Altamonte Heights Condominium Assoc., Inc., No. 6:11–cv–1637–Orl–31DAB, 2012 WL 10511, at * 4 (M.D. Fla. Jan. 3, 2012) (there is "no basis in the statute" for a separate cause of action based on a defendant's requests for additional information from the plaintiff). For these reasons, count two of the Complaint is dismissed with

---

[8] While policy statements lack the force of law, they do have the "power to persuade." Christensen v. Harris County, 529 U.S. 576, 587 (2000).

prejudice.[9]

Lastly, the Court addresses count three of the Complaint which alleges retaliation in violation of the FHA in violation of 42 U.S.C. § 3617.[10]  Section 3617 of Title 42 of the United States Code states:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C.A. § 3617.  See, e.g., Dixon v. The Hallmark Cos., Inc., 627 F.3d 849, 858 (11th Cir. 2010) (a claim for retaliation requires coercion, intimidation, threats or interference with the exercise of rights under section 3404); Wood v. Briarwinds Condominium Assoc Bd. of Directors, 369 F. App'x 1, 2 (11th Cir. 2010) (retaliation claim must allege conduct that rises to the level of coercion or intimidation under the FHA and demonstrate a nexus between the complained-about conduct and the FHA protected activity); Lawrence v. Courtyards at Deerwood Association, Inc., 318 F. Supp.

---

[9] In so ruling, the Court rejects Plaintiffs' reliance on Harding v. Orlando Apartments, LLC, No. 6:11–cv–85–Orl–19DAB, 2011 WL 1457164, at * 4- 6 (M.D. Fla. Apr. 15, 2011).  The plaintiff in Harding did not seek to characterize a request for information as the basis for a separate cause of action.  Nor did the plaintiff in Harding seek to bring a claim pursuant to 42 U.S.C. § 3604(f)(3) for denial of an accommodation.

[10] Plaintiffs point to the following acts by Defendants in support of this claim: (a) denying Plaintiffs full enjoyment and use of the available parking accommodations at their home; (b) ridiculing Plaintiffs by sending them a flyer of steps to take if someone you are with has a heart attack; (c) enacting new restrictions at the South Parking Deck solely aimed at denying Plaintiffs an accommodation; (d) procuring surveillance of Ms. Solodor; (e) demanding intrusive information different from any other person with a disability who requested an accommodation to obtain a parking space; (f) demanding invasive information regarding Ms. Solodar's medical history, including information that far exceeds the limited information to determine a disability; (g) restricting access for Ms. Solodar to employees of her condominium association and (h) exposing Plaintiffs to public ridicule to other members of the condominium association.  (Compl. ¶ 75(a)-(h)).

2d 1133, 1143-44 (S.D. Fla. 2004) (retaliation claim requires coercion, intimidation, threats or interference with the plaintiff's exercise or enjoyment of any right under sections 3603-3606 because of a discriminatory animus).

After careful consideration, the Court finds that the allegations pled in the Complaint do not support a claim for retaliation. Cases that have permitted these types of claims to proceed contain factual allegations of incidents far more egregious than what Plaintiffs have alleged. For example, the Eleventh Circuit Court of Appeals permitted a FHA retaliation claim to proceed when the plaintiff alleged his neighbors left him a threatening note to "break [him] in half" if he did not leave the neighborhood, ran up to his truck and hit it while shouting obscenities and spitting at the plaintiff. Sofarelli v. Pinellas County, 931 F.2d 718, 722 (11th Cir. 1991). Other courts which have permitted FHA retaliation claims to proceed involved similar egregious conduct. See, e.g., United States v. Sea Winds of Marco, Inc., 893 F. Supp. 1051, 1055 (M.D. Fla. 1995) (complaint stated a claim under the FHA by claiming the corporate defendant instituted a policy requiring identification wristbands to be worn but the policy was only enforced against Hispanic tenants and Hispanic tenants were selectively monitored and derogatory remarks made against them); Johnson v. Smith, 810 F. Supp. 235, 238-39 (N.D. Ill. 1992) (motion to dismiss denied when the plaintiff alleged that the defendants burned a cross on the plaintiff's property); People Helpers Foundation v. City of Richmond, 781 F. Supp. 1132, 1133 (E.D. Va. 1992) (by pleading neighbors made derogatory comments, gathered other neighbors together in a threatening manner and complained to the police that they did not want these "types" from living in the building, the plaintiff adequately pled a retaliation claim under FHA). Here, the facts alleged either recast Defendants' alleged denial of Plaintiffs' request for a parking space (Compl. ¶ 75(a), (c), (d), (e), (f)), or do not constitute a

violation of the statute as a matter of law. (Compl. ¶ 75(b), (g), (h).) Plaintiffs are granted leave to amend this count, assuming they can do so in good faith and subject to the requirements of Rule 11 of the Federal Rules of Civil Procedure.

### IV. Conclusion

Defendants' Motion to Dismiss Complaint with Prejudice (DE 18) is **GRANTED IN PART AND DENIED IN PART.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 2nd day of May, 2012.

_____
KENNETH A. MARRA
United States District Judge